### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF FLORIDA
### MIAMI DIVISION

Case No.: _____

DEHK LLC, KYLE DEATON, KEVIN ELLIS,
COLTON HANSON, and JOHN KEEVER,

      Plaintiffs,

v.

MASTEC, INC., MASTEC NORTH
AMERICA, INC., and SEFNCO
COMMUNICATIONS, INC.,

      Defendants.

_____/

### COMPLAINT

Plaintiffs, DEHK LLC, KYLE DEATON, KEVIN ELLIS, COLTON HANSON, and JOHN KEEVER, for their Complaint against the above-named Defendants, MASTEC, INC., MASTEC NORTH AMERICA, INC., and SEFNCO COMMUNICATIONS, INC. state and allege as follows:

### PARTIES

1.     DEHK LLC ("DEHK") is a Colorado limited liability company with its principal place of business located at 33250 CR 21, Elizabeth, Colorado 80107. DEHK's individual members are not citizens of Florida or Washington.

2.     Kyle Deaton ("Deaton") is an individual and a citizen of Arizona. Deaton is one of four members of DEHK.

3.     Kevin Ellis ("Ellis") is an individual and a citizen of Colorado. Ellis is one of four members of DEHK.

4.      Colton Hanson ("Hanson") is an individual and a citizen of Colorado. Hanson is one of four members of DEHK.

5.      John Keever ("Keever") is an individual and a citizen of North Carolina. Keever is one of four members of DEHK.

6.      MasTec, Inc. is a Florida corporation with its principal place of business located at 800 South Douglas Road, Suite 1200, Coral Gables, Florida 33134.

7.      MasTec North America, Inc. is a subsidiary of MasTec, Inc. and is a Florida corporation with its principal place of business located at 800 South Douglas Road, Suite 1200, Coral Gables, Florida 33134 (collectively with MasTec, Inc., "MasTec").

8.      SEFNCO Communications, Inc. ("SEFNCO") is a subsidiary of MasTec and is a Washington corporation with its principal place of business located at 4610 Tacoma Avenue, Sumner, Washington 98390. SEFNCO maintains a principal office mailing address at 800 South Douglas Road, Suite 1200, Coral Gables, Florida 33134.

## JURISDICTION AND VENUE

9.      This Court has general personal jurisdiction over MasTec as a citizen of Florida.

10.     This Court has general personal jurisdiction over MasTec by way of Section 7.14.1 of the Membership Interest Purchase Agreement ("MIPA") between MasTec and DEHK, Deaton, Ellis, Hanson, and Keever, which provides that each party "submits to the exclusive jurisdiction of the state courts of the State of Florida or the United States District Courts located in the Southern District of Florida for the purpose of any Action between or among the parties (or any of them) arising in whole or in part under or in connection with this Agreement."

11.     This Court has general personal jurisdiction over SEFNCO because its activities in Florida—both independently and as a subsidiary of MasTec—are so continuous and systematic as to render it at home in this forum.

12.     This Court has specific personal jurisdiction over SEFNCO because it purposefully directed its tortious activities in, and caused a substantial effect within, the State of Florida.

13.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) because this is a civil action between citizens of Colorado, Arizona, North Carolina, Washington, and Florida, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

14.     Venue is proper in this district under 28 U.S.C. § 1391(b)(1) and 28 U.S.C. § 1391(b)(2) because MasTec is a resident of this district, SEFNCO's presence and activities render it at home in this district, and a substantial part of the events or omissions giving rise to the claims asserted occurred in this district.

15.     Venue is proper in this district by way of Section 7.14.2 of the MIPA, which provides that "any Action between the parties arising in whole or in part under or in connection with this Agreement, such party will bring such Actions only in Miami-Dade County, Florida."

## FACTS COMMON TO ALL COUNTS

16.     MasTec is a multinational infrastructure engineering and construction company.

17.     Part of MasTec's business model is the acquisition and consolidation of its competitors.

18.     In 2017, MasTec acquired SEFNCO and made it a MasTec subsidiary.

19.     MasTec's purchase of SEFNCO expanded MasTec's geographic and customer capacity in the wireline/fiber deployment market, primarily in the Washington, Oregon, California, and Colorado markets.

20.     At all relevant times, SEFNCO was a direct competitor of WYCO Field Services, LLC and WYCO's subsidiary, A1 Traffic Control & Safety LLC (collectively, "WYCO") in the Colorado market.

21.     In 2020, MasTec set its sights on acquiring WYCO.

22.     WYCO was a well-known, highly successful utility contractor that was built on the experience and hard work of its members Deaton, Ellis, Hanson, and Keever.

23.     Since its founding in 2014, WYCO grew its business operations within Colorado and expanded into the nearby states of Wyoming, Utah, Arizona, and Texas.

24.     Prior to and during the negotiations between MasTec and WYCO's members, MasTec falsely represented that if WYCO were acquired by MasTec, WYCO would not report to SEFNCO, at least until after April 30, 2025.

25.     At the time these statements were made, MasTec knew them to be false.

26.     MasTec's false representation induced WYCO's members to sell WYCO to MasTec and sign the MIPA.

27.     All the while, MasTec planned to operate its business as it saw fit and disregard the express statements—later memorialized by contract—upon which WYCO's members had relied.

28.     On May 13, 2020, Deaton, Ellis, Hanson, and Keever—by way of their limited liability company, DEHK—sold their interests in WYCO to MasTec pursuant to the MIPA, which resulted in WYCO becoming a MasTec subsidiary.

29.     SEFNCO is not a party to the MIPA.

30.     In addition to paying DEHK, Deaton, Ellis, Hanson, and Keever a Cash Purchase Price due at Closing, MasTec agreed to pay Earn-Out Payments based on WYCO's performance over an Earn-Out Period.

31.     The Earn-Out Period spans from May 1, 2020 to December 31, 2020, then annually from January 1 to December 31 for the years 2021 to 2023, and finally from January 1, 2024 to April 30, 2025.

32.     Because SEFNCO was already a subsidiary of MasTec and a direct competitor of WYCO, DEHK, Deaton, Ellis, Hanson, and Keever insisted on including a provision in the MIPA to ensure that MasTec would not unfairly eliminate the Earn-Out Payments by using SEFNCO to cannibalize WYCO's existing business.

33.     As an example, the parties contemplated keeping Comcast as a WYCO client and ensuring that WYCO would expand its Comcast footprint and work volume.

34.     To that effect, MasTec and DEHK, Deaton, Ellis, Hanson, and Keever agreed to the following provision to segregate WYCO from SEFNCO:

1.      PURCHASE AND SALE OF PURCHASED INTERESTS.

\* \* \* \*

1.8.7   Following the Closing Date, Buyer will operate the Acquired Companies during the period for which the Sellers are entitled to earn Earn-Out Payments based upon the business requirements of Buyer and its Affiliates taken as a whole. Subject to the foregoing, Buyer will be permitted, following the Closing Date, to make changes at its sole discretion to the operations, corporate organization, personnel, accounting practices and other aspects of the Acquired Companies and the Business, including actions that may have an impact on the achievement of Earn-Out Payments, and the Sellers will not have any right to claim any lost Earn-Out Payments or other damages as a result of such decisions *so long as such changes are not made in bad faith for the principal purpose of reducing amounts that otherwise would be payable to the Sellers. Notwithstanding anything the contrary set forth herein, the Acquired Companies will not report to SEFNCO Communications, Inc. or Scott Nall during the period for which the Sellers are entitled to earn Earn-Out Payments.*

35.     MasTec was expressly prohibited from making changes to WYCO in bad faith for the principal purpose of reducing amounts that otherwise would be payable to DEHK, Deaton, Ellis, Hanson, and Keever as Earn-Out Payments.

36.     If MasTec breached the MIPA, MasTec agreed to indemnify DEHK, Deaton, Ellis, Hanson, and Keever for any and all "Losses" sustained:

5.     INDEMNIFICATION.

* * * *

5.3     <u>Indemnification by Buyer</u>. Subject to the limitations set forth in this <u>Section 5</u>, from and after Closing, MasTec and Buyer will assume liability for and will indemnify, defend, reimburse and hold harmless the Sellers and their respective Affiliates, and the Representatives and Affiliates of each of the foregoing Persons (each, a "<u>Seller Indemnified Person</u>"), from, against and in respect of any and all Losses incurred or suffered by Seller Indemnified Persons or any of them as a result of, arising out of or relating to, directly or indirectly:

5.3.1     any breach of, or inaccuracy in, any representation or warranty made by MasTec or Buyer in <u>Section 3</u>; or

5.3.2     any breach or violation of any covenant or agreement of MasTec or Buyer pursuant to this Agreement or any of the Seller Agreements.

37.     "Losses", which include attorneys' fees and costs, are broadly defined under the MIPA as:

any and all Actions, Liabilities, Governmental Orders, Encumbrances, losses, damages, bonds, dues, assessments, fines, interest, penalties, Taxes, fees, costs (including costs of investigation, defense and enforcement of this Agreement), diminution of value, lost profits, consequential damages, expenses or amounts paid in settlement (in each case, whether or not realized and including attorneys', experts' and paralegal fees and other expenses and court costs at the administrative, trial and appellate levels), threatened or actual, and whether or not involving a Third Party Claim. . . .

38.     Almost immediately after executing the MIPA, MasTec breached Section 1.8.7 by directing WYCO to report to SEFNCO.

39.     In July 2020, Scott Nall (CEO of SEFNCO) told Rick Gray (Senior Vice President of MasTec) that all Denver Comcast work should be under SEFNCO's control and that WYCO should be given to SEFNCO. Mr. Nall further stated that he was prepared to starve WYCO to accomplish SEFNCO's interest regardless of the impact on MasTec.

40.    By the end of May 2020, and at MasTec's direction, Comcast began canceling WYCO-issued purchase orders and reassigning them to SEFNCO.

41.    As part of this arrangement, SEFNCO was assigned work orders in the Colorado market that had initially been awarded to WYCO.

42.    By 2022, MasTec required WYCO to report to SEFNCO, which oversaw MasTec's West Region.

43.    By May 2023, WYCO's Colorado and Wyoming operations were reassigned to SEFNCO.

44.    WYCO's Colorado and Wyoming operations accounted for 40% of WYCO's revenue and profit over the previous two years and represented the core of WYCO's business.

45.    In June 2023, MasTec continued gutting WYCO by reassigning WYCO's Utah, Arizona, and Texas operations to SEFNCO.

46.    Additionally, SEFNCO and its personnel—identifying solely with SEFNCO—drove off WYCO's key team members, which resulted in the loss of WYCO's wireless division and $10 million in topline revenue.

47.    Although MasTec promised to account for the Comcast business transferred in bad faith to SEFNCO when calculating Earn-Out Payments, it did not make good on its promise.

48.    The unrealized Comcast revenue significantly impacted the Earn-Out Payments.

49.    MasTec knew that transferring the Comcast business away from WYCO would have a significant impact on the Earn-Out Payments given that Comcast-associated revenue doubled every year and amounted to approximately $13 million annually at the time it was improperly transferred to SEFNCO.

50.    MasTec's false statements and conduct constituted fraud or willful misconduct.

### COUNT 1 – FRAUD IN THE INDUCEMENT
### (MasTec, Inc. and MasTech North America, Inc.)

51.     Plaintiffs incorporate by reference all facts alleged as though fully set forth herein.

52.     MasTec offered to buy WYCO and represented to DEHK, Deaton, Ellis, Hanson, and Keever that as a condition of the purchase, WYCO would not report to SEFNCO Communications, Inc. or Scott Nall.

53.     MasTec further represented that once the MIPA was signed, WYCO would retain its relationship with Comcast under its then-existing agreement.

54.     MasTec's representations were false statements of material fact.

55.     At the time the representations were made, MasTec knew or should have known that its statements of material fact were false.

56.     MasTec never intended to follow through on its representations.

57.     MasTec's misrepresentations of material fact were meant to induce DEHK, Deaton, Ellis, Hanson, and Keever to sell WYCO and enter into the MIPA.

58.     DEHK, Deaton, Ellis, Hanson, and Keever relied on MasTec's misrepresentations to their detriment.

59.     MasTec's false statements caused injury DEHK, Deaton, Ellis, Hanson, and Keever in an amount to be determined at trial.

### COUNT 2 – VIOLATION OF FLORIDA'S DECEPTIVE AND UNFAIR TRADE
### PRACTICES ACT
### (MasTec, Inc., MasTech North America, Inc., and SEFNCO Communications, Inc.)

60.     Plaintiffs incorporate by reference all facts alleged as though fully set forth herein.

61.     By offering to buy WYCO under false pretenses, MasTec engaged in unfair methods of competition, unconscionable acts and practices, and deceptive and unfair practices.

62.     When MasTec offered to buy WYCO. it represented to DEHK, Deaton, Ellis, Hanson, and Keever that as a condition of the purchase, WYCO would not report to SEFNCO Communications, Inc. or Scott Nall.

63.     MasTec further represented that once the MIPA was signed, WYCO would retain its relationship with Comcast under its then-existing agreement.

64.     MasTec's representations were false statements of material fact.

65.     At the time the representations were made, MasTec knew or should have known that its statements of material fact were false.

66.     In fact, MasTec never intended to follow through on its promises.

67.     MasTec's misrepresentations of material fact were meant to induce DEHK, Deaton, Ellis, Hanson, and Keever to sell WYCO and enter into the MIPA.

68.     DEHK, Deaton, Ellis, Hanson, and Keever relied on MasTec's misrepresentations to their detriment.

69.     MasTec's deceptive and unfair practices caused DEHK, Deaton, Ellis, Hanson, and Keever to suffer actual damages, including attorneys' fees and costs, in an amount to be determined at trial.

## COUNT 3 – BREACH OF CONTRACT
### (MasTec, Inc. and MasTech North America, Inc.)

70.     Plaintiffs incorporate by reference all facts alleged as though fully set forth herein.

71.     MasTec, DEHK, Deaton, Ellis, Hanson, and Keever are parties to the MIPA.

72.     The MIPA is a valid and enforceable contract.

73.     MasTec breached Section 1.8.7 of the MIPA by requiring WYCO to report to SEFNCO and Scott Nall during the Earn-Out Period.

74.     MasTec breached Section 1.8.7 of the MIPA by modifying the operations, corporate organization, personnel, accounting practices, and other aspects of WYCO in bad faith for the principal purpose of reducing amounts that otherwise would be payable to DEHK, Deaton, Ellis, Hanson, and Keever as Earn-Out Payments.

75.     MasTec's breaches caused DEHK, Deaton, Ellis, Hanson, and Keever to suffer damages.

76.     By breaching the MIPA, MasTec is required to indemnify DEHK, Deaton, Ellis, Hanson, and Keever for all "Losses" sustained by them pursuant to Section 5.3 of the MIPA.

77.     By breaching the MIPA, the restrictive covenants in Section 4.2 of the MIPA are rendered unenforceable by operation of law.

## COUNT 4 – TORTIOUS INTERFERENCE WITH A CONTRACT
### (SEFNCO Communications, Inc.)

78.     Plaintiffs incorporate by reference all facts alleged as though fully set forth herein.

79.     By entering into the MIPA, DEHK, Deaton, Ellis, Hanson, and Keever had a business relationship with MasTec pursuant to an enforceable contract.

80.     SEFNCO had knowledge of DEHK, Deaton, Ellis, Hanson, and Keever's business relationship with MasTec and the MIPA.

81.     By demanding that WYCO report to SEFNCO and siphoning work away from WYCO, SEFNCO intentionally and unjustly interfered with DEHK, Deaton, Ellis, Hanson, and Keever's relationship with MasTec.

82.     SEFNCO's intentional and unjustified interference caused MasTec to breach the MIPA.

83.     SEFNCO's conduct caused DEHK, Deaton, Ellis, Hanson, and Keever to suffer damages.

**COUNT 5 – TORTIOUS INTERFERENCE WITH A BUSINESS RELATIONSHIP
(SEFNCO Communications, Inc.)**

84.     Plaintiffs incorporate by reference all facts alleged as though fully set forth herein.

85.     By entering into the MIPA, DEHK, Deaton, Ellis, Hanson, and Keever had a business relationship with MasTec pursuant to an enforceable contract.

86.     SEFNCO had knowledge of DEHK, Deaton, Ellis, Hanson, and Keever's business relationship with MasTec and the MIPA.

87.     By demanding that WYCO report to SEFNCO and siphoning work away from WYCO, SEFNCO intentionally and unjustly interfered with DEHK, Deaton, Ellis, Hanson, and Keever's relationship with MasTec.

88.     SEFNCO's intentional and unjustified interference caused MasTec to breach the MIPA.

89.     SEFNCO's conduct caused DEHK, Deaton, Ellis, Hanson, and Keever to suffer damages.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs demand judgment on all Counts and entry of judgment in their favor and against Defendants as follows:

A.     Monetary relief in their favor, plus all costs, attorneys' fees, prejudgment interest, and post-judgment interest;

B.     Leave to amend for purposes of asserting punitive damages;

C.     Declaratory relief as applicable and appropriate;

D.     Injunctive relief as applicable and appropriate; and

E.     For such other and further relief as the Court deems just and proper.

Dated: April 12, 2024

**FOX ROTHSCHILD LLP**

By: _/s/ W Scott Mason_

    W Scott Mason
    Florida Bar No. 66229
    777 South Flagler Drive, Suite 1700
    West Palm Beach, Florida 33401
    Phillips Point – West Tower
    Telephone: (561) 804-4432
    Facsimile: (561) 835-9602
    wmason@foxrothschild.com

    *Attorneys for DEHK LLC, Kyle Deaton, Kevin Ellis, Colton Hanson, and John Keever*