UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-21383-CIV-ALTONAGA/Reid

**DEHK LLC**; *et al.*,

    Plaintiffs,
v.

**MASTEC INC.**; *et al.*,

    Defendants.
_____/

**ORDER**

**THIS CAUSE** came before the Court on Defendants, MasTec, Inc., MasTec North America, Inc. (together, the "MasTec Defendants") and SEFNCO Communications, Inc.'s Motion to Dismiss and Motion to Compel Arbitration . . . [ECF No. 45], filed on August 12, 2024. Plaintiffs, DEHK LLC, Kyle Deaton, Kevin Ellis, Colton Hanson, and John Keever filed a Response [ECF No. 46]; to which Defendants filed a Reply [ECF No. 51]. The Court has carefully considered the Second Amended Complaint ("SAC") [ECF No. 44], the parties' written submissions, and applicable law.

**I.  BACKGROUND**

Plaintiff DEHK LLC is a Colorado limited liability company whose members are Plaintiffs Deaton, Ellis, Hanson, and Keever (the "individual Plaintiffs"). (*See* SAC ¶¶ 1–5). Plaintiffs built "a well-known, highly successful utility contractor" made up of WYCO Field Services, LLC and WYCO's subsidiary, A1 Traffic Control & Safety LLC (together, "WYCO"). (*Id.* ¶ 43; *see also id.* ¶¶ 41, 50). In 2020, the MasTec Defendants "set [their] sights on acquiring" Plaintiffs' interests in WYCO. (*Id.* ¶ 42 (alteration added); s*ee also id.* ¶ 50). Concerning to Plaintiffs, however, one of the MasTec Defendants' subsidiaries was SEFNCO Communications — "a direct competitor

of" WYCO "in the Colorado market." (*Id.* ¶ 41; *see also id.* ¶ 39). Plaintiffs were particularly concerned about their existing client, Comcast, "and ensuring that WYCO would expand its Comcast footprint and work volume" — not merely have WYCO's work subsumed by SEFNCO. (*Id.* ¶ 55; *see also id.* ¶¶ 54–56).

Plaintiffs only agreed to sell their interest in WYCO when the MasTec Defendants "falsely represented that if WYCO were acquired by MasTec, WYCO would not report to SEFNCO, at least until after April 30, 2025." (*Id.* ¶ 45). In May 2020, the MasTec Defendants, DEHK LLC, and the individual Plaintiffs entered into a Membership Interest Purchase Agreement (the "MIPA"); as a result, WYCO became a subsidiary of the MasTec Defendants. (*See id.* ¶¶ 12, 50). The MasTec Defendants agreed to pay Plaintiffs a one-time cash purchase price, as well as ongoing "Earn-Out Payments based on WYCO's performance" through April 2025. (*Id.* ¶ 52; *see also id.* ¶ 53).

The Earn-Out Payments were set to be paid for certain periods: "from May 1, 2020 to December 31, 2020, then annually from January 1 to December 31 for the years 2021 to 2023, and finally from January 1, 2024 to April 30, 2025." (*Id.* ¶ 53). The MasTec Defendants report they paid "Plaintiffs over $5.8 million in Earn-Out Payments for fiscal years 2020 [to] 2022." (Mot. 2 (alteration added)).[1] But in 2023, the Earn-Out period "did not result in an Earn-Out Payment to Plaintiffs[.]" (*Id.* (alteration added)). Plaintiffs allege this downturn in WYCO's performance was due to subterfuge by SEFNCO — with the MasTec Defendants' knowledge — that resulted in WYCO's business, including Comcast, being reassigned to SEFNCO. (*See* SAC ¶¶ 60–73).

Plaintiffs now bring five claims against Defendants: a fraud in the inducement claim against the MasTec Defendants (*see id.* ¶¶ 74–82); a violation of Florida's Deceptive and Unfair

---

[1] The Court uses the pagination generated by the electronic CM/ECF database, which appears in the headers of all court filings.

2

Trade Practices Act ("FDUTPA") claim against all Defendants (*see id.* ¶¶ 83–92); a breach of contract claim against the MasTec Defendants (*see id.* ¶¶ 93–100); a tortious interference with contract claim against SEFNCO (*see id.* ¶¶ 101–106); and a tortious interference with a business relationship claim against SEFNCO (*see id*. ¶¶ 107–112). Defendants move to dismiss the Second Amended Complaint in its entirety and ask that the breach of contract claim be submitted to arbitration. (*See generally* Mot.).

## II.  LEGAL STANDARDS

***Rule 12(b)(6)***.  "To survive a motion to dismiss [under Federal Rule of Civil Procedure 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (alteration added; quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A pleading withstands a motion to dismiss if it alleges "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).  "The mere possibility the defendant acted unlawfully is insufficient to survive a motion to dismiss." *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1261 (11th Cir. 2009) (citation omitted), *abrogated on other grounds by Mohamad v. Palestinian Auth.*, 566 U.S. 449 (2012). A complaint's "well-pled allegations must nudge the claim 'across the line from conceivable to plausible.'" *Id.* (quoting *Twombly*, 550 U.S. at 570).

This pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  When considering a motion to dismiss, a court must construe the complaint in the light most favorable to the plaintiff and take its factual allegations as true. *See*

*Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997) (citing *SEC v. ESM Grp., Inc.*, 835 F.2d 270, 272 (11th Cir. 1988)).

**Rule 9(b)**.  "Claims that sound in fraud must comply not only with the plausibility standard articulated in *Twombly* and *Iqbal*, but also the heightened pleading requirements of Rule 9(b)." *Young v. Grand Canyon Univ., Inc.*, 57 F.4th 861, 875 (11th Cir. 2023) (citation omitted).  As the Eleventh Circuit has recently explained,

> Rule 9(b) is satisfied if the complaint sets forth (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud.

*Id.* at 875–76 (quoting *Tello v. Dean Witter Reynolds, Inc.*, 494 F.3d 956, 972 (11th Cir. 2007)).

**Arbitration**.  "Arbitration is a matter of contract[.]"  *U.S. Nutraceuticals, LLC v. Cyanotech Corp.*, 769 F.3d 1308, 1311 (11th Cir. 2014) (alteration adopted; other alteration added; quoting *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582 (1960)).  The Federal Arbitration Act ("FAA") makes written arbitration agreements "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.  The FAA evinces a "liberal federal policy favoring arbitration," as well as a respect for the "fundamental principle that arbitration is a matter of contract."  *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (citations and quotation marks omitted).

To be clear, "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."  *Olsher Metals Corp. v. Olsher*, No. 01-3212-Civ, 2003 WL 25600635, at *3 (S.D. Fla. Mar. 26, 2003) (quotation marks omitted; quoting *AT&T Techs., Inc. v. Commc'ns. Workers of Am.*, 475 U.S. 643, 648 (1986)).  "The party opposing arbitration has the affirmative duty of coming forward by way of affidavit or allegation of fact to show cause why the court

4

should not compel arbitration, which is a burden not unlike that of a party seeking summary judgment." *Bhim v. Rent-A-Ctr., Inc.*, 655 F. Supp. 2d 1307, 1311 (S.D. Fla. 2009) (citation and quotation marks omitted). State law generally governs the validity, enforceability, and revocability of arbitration agreements. *See id.*

### III. DISCUSSION

Defendants ask the Court to dismiss the Second Amended Complaint for failure to meet the pleading requirements of Rule 9(b) and failure to state claims for relief; Defendants also move to enforce the arbitration clause of the MIPA as to Plaintiffs' breach of contract claim. (*See* Mot. 1). The Court addresses each argument in turn.

**A. Fraud in the Inducement**

Defendants' challenge to the fraud in the inducement claim is two-pronged: they argue Plaintiffs fail to plead the claim with sufficient particularity under Federal Rule 9(b) (*see* Mot. 10–11) and fail to state a claim (*see id.* 6–10).

Under Florida law — which all parties agree applies — a claim for fraud in the inducement is established when (1) a defendant made "a false statement concerning a material fact;" (2) the defendant either "knew or should have known that the representation was false;" (3) the defendant "intended to induce" the plaintiff "to act in reliance on the false statement;" and (4) the plaintiff "acted in reliance on the representation and was injured as a result." *SEB S.A. v. Sunbeam Corp.*, 148 F. App'x 774, 798 (11th Cir. 2005) (citing *Johnson v. Davis*, 480 So. 2d 625, 627 (Fla.1985)). "Fraudulent inducement claims are subject to Rule 9(b)'s heightened pleading standard." *CMS Distrib. Ltd. v. Crown Cell Inc.*, No. 20-24846-Civ, 2021 WL 2661512, at *3 (S.D. Fla. Mar. 24, 2021) (citation omitted).

5

Defendants argue Plaintiffs' fraudulent inducement claim should be dismissed because Plaintiffs do not "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b); (*see also* Mot. 10–11). Plaintiffs insist they have "pleaded all elements of a fraudulent inducement claim with the requisite particularity to put Defendants on notice of their claim." (Resp. 6). The Court agrees with Defendants — Plaintiffs have not met Rule 9(b)'s heightened standards.

Under Rule 9(b), "the complaint must state precisely what statements were made, in what documents or oral representations the statements were made, the time and place of each statement, who was responsible for each statement, how each statement misled plaintiff, and what the defendants obtained as a consequence of the fraud." *CMS Distrib. Ltd.*, 2021 WL 2661512 at *2 (citation and quotation marks omitted). The SAC fails to allege the time and place of each statement and who was responsible for each. Rather, Plaintiffs make general allegations, such as "[p]rior to and during the [MIPA] negotiations . . . [the] MasTec [Defendants] falsely represented" key facts. (SAC ¶ 45 (alterations added)). As a result, it is unclear whether these fraudulent misrepresentations occurred prior to formation of the MIPA; where the statements were made; and who, exactly, made these misrepresentations. *See CMS Distrib. Ltd.*, 2021 WL 2661512 at *3.

In short, Plaintiffs have not alleged "the who, what, when where, and how" of the alleged fraud. *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1262 (11th Cir. 2006) (citation omitted). Plaintiffs' fraudulent inducement count is thus dismissed, without prejudice.[2]

**B.  FDUTPA**

"The FDUTPA is designed 'to protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive,

---

[2] As the Court determines Plaintiffs fail to meet Rule 9(b)'s heightened pleading standard, it does not address Defendants' other arguments.

or unfair acts or practices in the conduct of any trade or commerce.'" *Kenneth F. Hackett & Assocs., Inc. v. GE Cap. Info. Tech. Sols., Inc.*, 744 F. Supp. 2d 1305, 1312 (S.D. Fla. 2010) (alteration adopted; quoting Fla. Stat. § 501.202(2)). To state a FDUTPA claim, a plaintiff must allege three basic elements: "(1) a deceptive act or unfair practice in the course of trade or commerce; (2) causation; and (3) actual damages." *Alhassid v. Bank of Am., N.A.*, 60 F. Supp. 3d 1302, 1323 (S.D. Fla. 2014) (citations omitted).

The "FDUTPA defines 'trade or commerce' as 'the advertising, soliciting, providing, offering, or distributing, whether by sale, rental, or otherwise, of any good or service, or any property, whether tangible or intangible, or any other article, commodity, or thing of value, wherever situated.'" *Id.* (quoting Fla. Stat. § 501.203(8)). A deceptive act or practice is one likely to mislead the consumer acting reasonably under the circumstances, to the consumer's detriment; and an unfair practice is one that is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers. *See Kenneth F. Hackett & Assocs., Inc.*, 744 F. Supp. 2d at 1312 (citations omitted).

Defendants argue Plaintiffs fail to state a FDUTPA claim. First, Defendants assert Plaintiffs' claim must fail because Plaintiffs are not Florida residents, and "none of the alleged acts took place in Florida[.]" (Mot. 11 (alteration added); *see id.* 11–12). Second, they argue Plaintiffs fail to plead deception. (*See id.* 12–13).

The Court quickly dispenses with Defendants' first argument, as the "FDUTPA applies to non-Florida residents if the offending conduct took place predominantly or entirely in Florida." *Karhu v. Vital Pharms., Inc.*, No. 13-60768-Civ, 2013 WL 4047016, at *10 (S.D. Fla. Aug. 9, 2013); *see also Barnext Offshore, Ltd. v. Ferretti Grp. USA, Inc.*, No. 10-23869-Civ, 2012 WL 1570057, at *6 (S.D. Fla. May 2, 2012) (where the undersigned noted that "nothing . . . suggests

7

that the FDUTPA applies *only* when conduct occurs entirely within Florida." (alterations added; emphasis original)).

As to Defendants' contention that no activity took place in Florida, Plaintiffs allege all Defendants are domiciled, or conduct significant business, in Florida. (*See* SAC ¶¶ 6–10). Drawing all inferences in Plaintiffs' favor, as the Court must, *see Brooks*, 116 F.3d at 1369, Plaintiffs have alleged wrongdoing that took place predominantly in Florida. Indeed, "when [] tortious acts arise out of corporate policies or decision-making, the conduct is deemed to have taken place at the corporation's principal place of business or nerve center, unless demonstrated otherwise." *In re Equifax, Inc., Customer Data Sec. Breach Litig.*, No. 17-md-2800, 2022 WL 1122841, at *3 (N.D. Ga. Apr. 13, 2022) (alteration added; citations omitted). Defendants' arguments thus fail on this point.

Defendants next argue that Plaintiffs cannot, as a matter of law, plead a deceptive practice. In support, Defendants point to an express limitation of representations in the MIPA:

> Each Seller acknowledges and agrees that none of Buyer, MasTec, their Affiliates or Representatives has made any representations or warranties regarding Buyer, MasTec, the assets or operations of Buyer, MasTec, their Subsidiaries, the future performance of either Acquired Company following the Closing, the probability of any Earn-Out Payments or otherwise in connection with the Contemplated Transactions, other than the representations and warranties expressly made in Section 3.

(Defs.' June 17, 2024 Mot. to Dismiss . . . [ECF No. 28], Ex. A, MIPA [ECF No. 28-1] § 2.34).

Plaintiffs allege Defendants made at least two false statements. (*See* SAC ¶¶ 75–77). The first alleged false statement is the "MasTec [Defendants] offered to buy WYCO and represented to [Plaintiffs] that as a condition of the purchase, WYCO would not report to SEFNCO Communications, Inc. or [its CEO] during the parties' performance of the obligations set forth in the MIPA." (*Id.* ¶ 75 (alterations added)). The second is the "MasTec [Defendants] further

represented that once the MIPA was signed, WYCO would retain its relationship with Comcast under its then-existing agreement." (*Id.* ¶ 76 (alteration added)).

Because the MIPA "expressly limit[s] Plaintiffs' reliance *only* to those representations and warranties specifically set forth in [MIPA] Section 3[,]" Defendants insist that "any reliance on [an] alleged representation" outside of MIPA Section 3 "is not justified." (Mot. 8 (alterations and emphasis added; citation omitted); *see also id.* 13). Put differently, Defendants' theory is "Plaintiffs . . . disclaimed reliance" on *any* representations outside of Section 3 of the MIPA. (*Id.* 8 (alteration added)). Because the representation regarding Comcast does not appear anywhere in the MIPA, and the representation regarding WYCO not reporting to SEFNCO or its CEO appears in Section 1.8, Defendants argue "[t]he MIPA expressly negates Plaintiffs' allegation of a deceptive statement[.]" (*Id.* 13 (alteration added)).

Admittedly, "[w]here a plaintiff relies on oral statements at variance with written documents he or she has signed, the plaintiff's reliance is not reasonable as a matter of law." *Indulgence Yacht Charters Ltd. v. Ardell Inc.*, No. 08-cv-60739, 2008 WL 4346749, at *7 (S.D. Fla. Sept. 16, 2008) (alteration added; citations omitted). Yet, akin to a fraudulent inducement claim, Plaintiffs allege that without Defendants' deceptive acts, Plaintiffs never would have entered into the MIPA in the first instance. (*See* SAC ¶¶ 84–91). And absent "a specific disclaimer of liability for fraud . . . , no matter the context, 'a party can not contract against liability for its own fraud.'" *Glob. Quest, LLC v. Horizon Yachts, Inc.*, 849 F.3d 1022, 1028 (11th Cir. 2017) (alteration adopted; additional alteration added; quoting *Oceanic Villas, Inc. v. Godson*, 4 So. 2d 689, 690 (Fla. 1941)).

After all, "where an agreement is procured by fraud or misrepresentation 'every part of the contract' is vitiated[.]" *Id.* at 1027 (alterations adopted; quoting *Oceanic Villas*, 4 So. 2d at 690).

9

The Florida Supreme Court's decision in *Oceanic Villas* is "binding precedent on the law of fraudulent inducement in Florida," and analogously applies to Plaintiffs' FDUTPA claim. *Id.* at 1028. The limitation of representation clause, and the rest of the MIPA, "may constitute evidence against plaintiff[s'] . . . allegations, but plaintiff[s'] claims are not precluded as a matter of law." *Id.* at 1028–29 (alterations added). In short, Plaintiffs have adequately pleaded a deceptive act for purposes of their FDUTPA claim.

### C. Tortious Interference

Next, Defendants challenge Plaintiffs' tortious interference claims against SEFNCO: interference with a contract and interference with a business relationship. (*See* Mot. 13–16). Defendants argue these counts of the SAC fail to state claims "because Plaintiffs allege that [the] MasTec [Defendants] and SEFNCO are one and the same, and a corporation cannot interfere with its own contract or business relationship." (Mot. 13 (alterations added)). The Court disagrees.

In Florida, "[t]o establish tortious interference with a contract or business relationship," a plaintiff must allege four elements:

> (1) the existence of a business relationship, not necessarily evidenced by an enforceable contract, under which the plaintiff has legal rights; (2) the defendant's knowledge of the relationship; (3) an intentional and unjustified interference with the relationship by the defendant; and (4) damage to the plaintiff as a result of the interference.

*Font & Nelson, PLLC v. Path Med., LLC*, 317 So. 3d 134, 138–39 (Fla. 4th DCA 2021) (citations omitted). Defendants argue Plaintiffs' tortious interference claims fail because "Plaintiffs cannot show that any potential interference was unjustified." (Mot. 14). Certainly, as Defendants point out (*see id.*), "[f]or interference to be unjustified, the interfering defendant must be a third party, a stranger to the business relationship[,]" *Whetstone Indus., Inc. v. Yowie Grp., Ltd.*, No. 17-cv-1286, 2022 WL 17489106, at *3 (M.D. Fla. July 5, 2022) (alteration added; citation and quotation marks omitted).

Nevertheless, "[w]hen two corporations are separate legal entities, the parent-subsidiary relationship does not negate one corporation's potential to interfere with the relationships of the other." *Id.* (citing *Peacock v. Gen. Motors Acceptance Corp.*, 432 So. 2d 142, 143 (Fla. 1st DCA 1983)). Plaintiffs allege SEFNCO at least has "independent management" from the MasTec Defendants, so "it [is] plausible that the parent and subsidiary corporations could have been unaligned in their decision-making." *Id.* (alteration added); (*see* SAC ¶ 62 (describing the "CEO of SEFNCO")).

Plaintiffs have done enough to allege tortious interference. This is true despite, as Defendants note, Plaintiffs' statements that the MasTec Defendants and SEFNCO are "one and the same." (SAC ¶ 14; *see also* Mot. 14–15). Plaintiffs can bring any number of alternative claims, even if they conflict with each other. *See Glenn v. U.S. Postal Serv.*, 939 F.2d 1516, 1523 (11th Cir. 1991) (noting that "[p]laintiffs can, of course, assert different and even contradictory claims" (alteration added)); Fed. R. Civ. P. 8(d) ("A party may set out [two] or more statements of a claim [] alternatively[.]" (alterations added)). The Court thus turns to Defendants' final argument.

**D. Arbitration**

The MIPA contains an arbitration provision that Defendants contend requires the Court to send Plaintiffs' breach of contract claim to arbitration. In this, the Court also agrees with Plaintiffs: the MIPA makes clear that "the arbitration provision is narrowly limited to resolving issues related to Generally Accepted Accounting Principles ("GAAP") when calculating Earn-Out Payments if an Earn-Out Objection is made[.]" (Resp. 17 (alteration added)).

The arbitration provision in question states:

If the Sellers' Representative timely delivers an Earn-Out Objection to Buyer, and Buyer and the Sellers' Representative are unable to resolve all of their disagreements with respect to the Earn-Out Payment within thirty (30) days after the end of the Earn-Out Review Period, then Buyer and the Sellers' Representative

11

> shall, within five (5) days thereafter, jointly retain [an agreed-upon] CPA Firm . . . which shall determine . . . only with respect to those specific adjustments in the Earn-Out Objection on which Buyer and the Sellers' Representative have not agreed, whether and to what extent, if any, the Earn-Out Payment amount requires adjustment . . . . The scope of the disputes to be resolved by the CPA Firm is limited to whether the calculation of the Earn-Out Payment was done in a manner consistent with GAAP on an accrual basis and in accordance with this Section 1.8, and the CPA Firm is not to make any other determination unless jointly requested in writing by the Sellers' Representative and Buyer.

(MIPA § 1.8.5 (alterations added)). Elsewhere in the MIPA, the parties agreed to "the exclusive jurisdiction of the state courts of the State of Florida or the United States District Courts located in the Southern District of Florida for the purpose of any Action between or among the parties (or any of them) arising in whole or in part under or in connection with this Agreement[.]" (*Id.* § 7.14.1 (alteration added)).

"[T]he determination of whether an arbitration clause requires arbitration of a particular dispute necessarily rests on the intent of the parties." *Seifert v. U.S. Home Corp.*, 750 So. 2d 633, 636 (Fla. 1999) (alteration added; citations and quotation marks omitted). And, "even in contracts containing broad arbitration provisions, the determination of whether a particular claim must be submitted to arbitration necessarily depends on the existence of some nexus between the dispute and the contract containing the arbitration clause." *Id.* at 638. Here, the Court fails to see the nexus.

The unambiguous language of the arbitration provision limits the scope of the arbitrable issue to "the calculation of the Earn-Out Payment[.]" (MIPA § 1.8.5 (alteration added)). Plaintiffs' breach of contract claim against the MasTec Defendants is not related to an alleged error in calculating Earn-Out Payments. (*See* SAC ¶¶ 93–100). Rather, the claim concerns the alleged "bad faith" changes in operations that breached the contract, and, as a result, lessened the amount of Earn-Out Payments. (*Id.* ¶ 97; *see also id.* ¶¶ 93–100). This is outside the scope of the MIPA's

arbitration provision. Further, the parties did not intend for *all* claims arising from the MIPA to go arbitration given the contract's venue selection clause. (*See* MIPA § 7.14.1–2).

The Court thus concludes the MIPA's language is unambiguous and the parties' intent clear; Plaintiffs' breach of contract claim is not required to be sent to arbitration.

### IV.  CONCLUSION

For the foregoing reasons, it is

**ORDERED AND ADJUDGED** that Defendants' Motion to Dismiss and Motion to Compel Arbitration . . .**[ECF No. 45]** is **GRANTED in part** and **DENIED in part**.  Count I is **DISMISSED without prejudice**.  Plaintiffs have until **October 2, 2024** to file a third amended complaint restating Count I to conform to Rule 9(b).

**DONE AND ORDERED** in Miami, Florida, this 26th day of September, 2024.

_____
**CECILIA M. ALTONAGA**
**CHIEF UNITED STATES DISTRICT JUDGE**

cc:    counsel of record